Electronically Filed
Intermediate Court of Appeals
30283
31-JUL-2012
11:55 AM

NO. 30283

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
DESTIN GALLARDE, Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. 08-1-1834)

MEMORANDUM OPINION
(By: Nakamura, C.J., and Foley and Reifurth, JJ.)

Defendant-Appellant Destin Gallarde (Destin) appeals from the Judgment filed on December 8, 2009, in the Circuit Court of the First Circuit (Circuit Court).[1] Plaintiff-Appellee State of Hawai'i (State) charged Destin with: (1) first-degree terroristic threatening with the use of a dangerous weapon, in violation of Hawaii Revised Statutes (HRS) § 707-716(1)(e) (Supp. 2008)[2] (Count 1); and (2) third-degree assault, in violation of

---

[1] The Honorable Randal K.O. Lee presided.

[2] HRS § 707-716(1)(e) states:

    (1) A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:

    . . .

    (e)   With the use of a dangerous instrument.

At the time relevant to this case, HRS § 707-715 (1993), in turn, defined terroristic threatening, in pertinent part, as follows:

(continued...)

HRS § 707-712(1)(a) (1993)[3] (Count 2). The complaining witness for both counts was Jeremy Goulette (Jeremy), who was the boyfriend of Destin's daughter and the father of Destin's grandson. A jury found Destin guilty of first-degree terroristic threatening and not guilty of third-degree assault. The Circuit Court sentenced Destin to a five-year term of probation, subject to special conditions that she serve a nine-day term of imprisonment and perform seventy-five hours of community service.

On appeal, Destin argues that the Circuit Court: (1) erred in refusing over Destin's objection to give the jury a defense-of-others instruction; (2) plainly erred in failing to instruct the jury that Destin had no duty to retreat; and (3) erred in refusing over Destin's objection to modify its "true threat" instruction. As explained below, we conclude that the Circuit Court erred in refusing to give a defense-of-others instruction. We vacate Destin's conviction for first-degree terroristic threatening and remand the case for a new trial.

BACKGROUND

At the time of the charged incident, Destin's daughter, Tiffany, was seventeen years old and was living with her boyfriend, Jeremy, who was twenty-one years old. Tiffany and Jeremy had a child (Child) who was about two and one-half years old. Tiffany, Jeremy, and Child lived at the residence of Jeremy's family along with Jeremy's mother, his mother's

---

[2](...continued)
A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person or serious damage to property of another or to commit a felony:

(1) With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]

[3] HRS § 707-712(1)(a) (1993) provides:

(1) A person commits the offense of assault in the third degree if the person:

(a) Intentionally, knowingly, or recklessly causes bodily injury to another person[.]

boyfriend, and Jeremy's younger brother. The charged offenses stemmed from a dispute between Jeremy and Tiffany. Tiffany wanted to take Child to visit her family. Jeremy told Tiffany to leave Child behind. At trial, the State and Destin presented markedly different versions of the pertinent events.

I.

The State called Jeremy who testified that his objection to Tiffany's taking Child was based on his concern that Tiffany would spend money and that she could avoid spending money if she left Child behind. According to Jeremy, he heard Destin's truck stop in front of his house and heard Tiffany yelling into the phone that Jeremy refused to allow Tiffany's family to take Child. When Jeremy went outside, he saw Destin who threatened to kill Jeremy and demanded that he give Child to her. Tiffany came outside and punched Jeremy. Destin picked up a hammer from the ground and approached Jeremy while holding the hammer slightly above her head. As Jeremy began backing up, Tiffany hit him again, and Destin, who no longer was holding the hammer, also punched Jeremy in the eye/nose area. Jeremy denied striking Destin or coming at her, standing over her, bumping her, or yelling at her. Jeremy also denied striking Tiffany before or after Destin's arrival.

II.

The witnesses for the defense included Tiffany and Destin. Tiffany testified that her older sister Chastity called and asked if Tiffany and Child could come for a visit. Although Jeremy initially gave Tiffany permission to visit her family with Child, he later accused Tiffany of "trying to run away from him." Jeremy told Tiffany to call her family and tell them that either Tiffany or Child could go for a visit, but not both of them. As Tiffany called her family to relay this message, Jeremy yelled at her, slapped the phone out of her hand, and assaulted her by punching her head and slapping her face, pushing her onto a bed, and placing a pillow over her face. Tiffany started screaming, and she heard Destin outside the house screaming Tiffany's name.

3

Tiffany testified that Jeremy ran outside and told Destin that he wanted to kill Tiffany and her family.  Tiffany saw Destin fall, "like Jeremy pushed [Destin] down[,]" and Jeremy challenged Destin to "hit him."  Tiffany intervened and struck Jeremy "to get him away from [her] mom."  Jeremy noticed that Tiffany was carrying a box, which contained her belongings, and Jeremy said that "everything was all one plan, that . . . the whole time [Tiffany] was planning on leaving him."  Jeremy grabbed the box and told Tiffany that she was not going anywhere.  Tiffany and Jeremy fought over the box.  Destin tried to separate them, and Tiffany thought Destin had a hammer in her hand at that time.  Jeremy "was going crazy" so Destin threw the hammer on the side, Destin and Tiffany left the yard, and Destin called the police.  Child remained in the house.  Tiffany recounted three prior incidents in which Jeremy had physically abused her by: (1) slapping and choking her; (2) slapping her, pulling her hair, punching her face, choking her, and shoving her; and (3) forcing her out of a car after she opened the door by accelerating and abruptly turning.

Destin testified that Chastity had called Tiffany about spending the day with them, but Tiffany called back and said they had to choose between seeing her or Child.  Chastity passed the phone to Destin, and Destin heard Tiffany screaming and yelling, "[H]elp, mommy.  Help."  Destin also heard slapping sounds before the phone went dead.  Destin, Chastity, and Tiffany's younger brother, "raced" to Jeremy's house in Destin's truck to "stop [Jeremy] from hitting [Tiffany]."  When they arrived, Destin could hear Tiffany screaming for Destin.  Destin opened a gate and entered the yard fronting the house.

According to Destin, Jeremy came out of the house.  He was angry and yelled at Destin to "get the fuck out of my yard." He told Destin he hated her family, threatened to hurt them, and said he would take Child so Destin's family would never see Child again.  Destin responded that there was "no fucking way" she was going to let Jeremy "do this to Tiffany."  Jeremy dared Destin to

4

punch him and demonstrated by punching himself. Destin was scared because "the veins in [Jeremy's] neck started popping out[,]" he made groaning noises, "[a]nd he wen look like one miniature red Incredible Hulk. . . . It looked really scary." Tiffany came out with a box, and Jeremy tried to stop her by grabbing the box. Destin went toward them, grabbed Tiffany and told her to go to the truck, and told Jeremy to "[l]eave my fucking daughter alone."

Jeremy came toward Destin and kept daring her to punch him. Jeremy came so close that he was touching Destin's body with his body. Jeremy ignored Destin's instruction to "step back," and so Destin pushed him. Jeremy took a couple steps back, then came towards Destin again until he was up against her body. He continued to yell and scream at her. Destin pushed Jeremy away a second time. When Jeremy again came toward Destin, she looked around for something to protect herself because Jeremy was bigger than her. The defense adduced evidence that Jeremy was about 5'11", weighed 180 pounds, and regularly lifted weights; Destin was about 4'10" and weighed about 125 pounds; and Tiffany was 5'0" and weighed 110 pounds.

Destin testified that she picked up a hammer, so she would have something "to protect herself with," and she held the hammer by her head. Tiffany "came from the other side" and hit Jeremy twice in the face. This made Jeremy's even "more nuts" and he began "growling more." Destin decided to throw the hammer aside and leave because she felt Jeremy was "gonna end up hurting people." Destin left the yard with Tiffany and called the police on her phone. Jeremy remained in the yard.

DISCUSSION

I.

A.

Destin argues that the Circuit Court erred in refusing to provide the jury with an instruction on the justification defense of use of force for the protection of other persons (defense of others) under HRS § 703-305 (1993) and that this

error requires that we vacate her terroristic threatening conviction. HRS § 703-305 provides in relevant part:

> (1) . . . the use of force upon or toward the person of another is justifiable to protect a third person when:
>
> (a) Under the circumstances as the actor believes them to be, the person whom the actor seeks to protect would be justified in using such protective force; and
>
> (b) The actor believes that the actor's intervention is necessary for the protection of the other person.

"[U]nder HRS § 703-305, in order to use force to protect a third person, the actor must have a reasonable belief that, as to the third person, (1) 'force is immediately necessary for the purpose of protecting [herself] against the use of unlawful force by the other person on the present occasion . . . .'" State v. Mark, 123 Hawai'i 205, 220, 231 P.3d 478, 493 (2010) (quoting HRS § 703-304(1) (1993), relating to use of force in self-protection).

## B.

The Circuit Court had initially included defense-of-others instructions regarding the assault charge (Court's Supplemental Instruction No. 4) and the terroristic threatening charge (Court's Supplemental Instruction No. 5) in its proposed jury instructions. However, during the settlement of jury instructions, the Circuit Court refused, over Destin's objection, to give any defense-of-others instruction. In explaining its refusal to give the Court's Supplemental Instruction No. 4, the Circuit Court stated that neither Jeremy's testimony nor Destin's testimony showed a threat of force by Jeremy at the time Destin picked up the hammer. The Circuit Court then considered whether Tiffany's testimony supported a defense-of-others instruction, and concluded that it did not:

> So the only evidence that the Court was concerned about was whether or not [Tiffany's] testimony would raise a scintilla of evidence with regards to use of force in defense of another person. But viewing her testimony or reviewing her testimony again, her testimony was that she came out of the house, saw her mother on the ground, surmised that the complainant had pushed her down. She got

in between the complainant and the defendant. The defendant [sic] [⁴/] turned his attention to a box that she dropped on the ground with her belongings, accused her of setting him up, namely that she was going to leave him. He grabbed the box. Tiffany then grabbed the box, in which case Destin Gallarde -- her testimony is Destin Gallarde picked up a hammer. The complainant released the box, and Tiffany then proceeded to run to the car.

So [Court's Supplemental Instruction No. 4] is refused over the objection of defendant.

The Circuit Court also refused to give a defense-of-others instruction for the terroristic threatening charge contained in the Court's Supplemental Instruction No. 5. Defense counsel objected to this ruling as follows:

Same argument, Judge. I'll just add to the Court's recitation of the facts testified to. I believe the facts -- I believe the testimony taken as a whole that morning given that Tiffany had testified that she had been abused that morning by Jeremy Goulette as well as Destin Gallarde's testimony that she had heard what sounded like abuse from Jeremy Goulette -- I think incorporating those facts and viewing the evidence in the totality does support the defense-of-others instruction.

## C.

The trial court is required to give an instruction requested by a defendant on any defense that has "any support in the evidence, provided such evidence would support the consideration of that issue by the jury, no matter how weak, inconclusive, or unsatisfactory the evidence may be." State v. Locquiao, 100 Hawai'i 195, 205, 58 P.3d 1242, 1252 (2002) (internal quotation marks and citation omitted); State v. Hironaka, 99 Hawai'i 198, 204, 53 P.3d 806, 812 (2002). The State argues that the Circuit Court properly refused to give a defense-of-others instruction because there was insufficient evidence to support a reasonable belief by Destin that Tiffany would have been justified in using protective force against Jeremy. We disagree.

---

⁴/ It appears that the Circuit Court here meant to say "the complainant" (i.e., Jeremy), rather than "[t]he defendant."

7

We conclude that there was sufficient evidence presented at trial to support the jury's consideration of a defense-of-others defense and that the Circuit Court therefore erred in refusing, over Destin's objection, to give a defense-of-others instruction. There was evidence that: (1) Jeremy was physically abusing Tiffany; (2) Destin overheard the abuse (slapping sounds) over the phone, while the abuse was in progress, along with Tiffany's cries for help; (3) Destin rushed over to Jeremy's house to protect her daughter and heard Tiffany screaming when Destin arrived; (4) Jeremy ran outside and angrily confronted Destin, telling Destin that he wanted to kill Tiffany and her family and that Destin's family would never see Child again; (5) Jeremy acted irrationally by daring Destin to hit him and by making growling noises; (6) Jeremy accused Tiffany of planning to leave him, said she was not going anywhere, and tried to stop Tiffany from leaving by fighting with Tiffany over a box Tiffany was carrying, which contained her belongings; (7) Destin went to assist Tiffany and told Jeremy "to leave my fucking daughter alone"; (8) Jeremy kept coming towards Destin despite her instructions to step back and her pushing him away; (9) Jeremy was much bigger than Destin and Tiffany; and (10) Destin picked up the hammer and held it by her head for protection against Jeremy.

The trial evidence was sufficient to raise a question for the jury over whether Destin had a valid defense-of-others defense. Moreover, the evidence that Jeremy had previously physically abused Tiffany served to distinguish this defense from a claim of self-defense by Destin. We conclude that the Circuit Court should have allowed Destin's defense-of-others defense to go to the jury and that the Circuit Court's error in refusing to give the jury a defense-of-others instruction requires that we vacate Destin's conviction for first-degree terroristic threatening.

II.

Destin argues that in instructing the jury on her claim of self-defense, the Circuit Court plainly erred in failing to instruct the jury that Destin had no duty to retreat. HRS § 703-304 (1993 & Supp. 2001), which sets forth the justification defense of use of force in self-protection (self-defense), provides in pertinent part as follows:

> (1) . . . the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.
>
> . . . .
>
> (3) Except as otherwise provided in subsections (4) and (5) of this section, <u>a person employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used without retreating</u>, surrendering possession, doing any other act which he has no legal duty to do, or abstaining from any lawful action.

(Emphasis added.)

The self-defense instruction given by the Circuit Court did not include a reference to HRS § 703-304(3)'s language that a person may estimate the necessity of employing protective force "without retreating[.]" The Circuit Court's self-defense instruction provided in relevant part:

> The reasonableness of the defendant, Destin Gallarde's belief that the use of such protective force was immediately necessary shall be determined from the viewpoint of a reasonable person in the defendant, Destin Gallarde's position under the circumstances of which the defendant, Destin Gallarde, was aware or as the defendant, Destin Gallarde, reasonably believed them to be.

Destin argues that because the prosecutor's cross-examination of Destin implied that she had a duty to retreat,[5]

---

[5] The prosecutor cross-examined Destin, in pertinent part, as follows:

Q:     . . . .

    When you told [Tiffany] let's get out of here, were you and Tiffany in Jeremy's yard?

A:     Yes.

(continued...)

the Circuit Court's failure to correct this false impression by instructing the jury that Destin had no duty to retreat constituted plain error. The State does not dispute that under HRS § 703-304(3), Destin was entitled to estimate the necessity of using protective force without retreating. However, it counters that: (1) in closing arguments, the prosecutor did not argue that Destin had a duty to retreat and the defense did not address this issue at all; (2) the prosecutor's cross-examination of Destin did not create the false impression that Destin had a

5/ (...continued)

Q:     Okay. And when you told Tiffany let's get out of here because he's gonna hurt somebody, did you -- were you able to get out of the yard?

A:     Yes.

Q:     Was there anything blocking your way?

A:     No.

Q:     Was there anybody blocking your way?

A:     No.

Q:     Was Jeremy at the gate blocking your way?

A:     No.

Q:     So nobody was in your way; is that right?

A:     Right.

Q:     Nobody was in your way between you and the gate when you grabbed the hammer; is that right?

A:     Right.

Q:     Okay. So you could have left. Before you grabbed the hammer, you could have left; is that right?

A:     Yes.

Q:     Okay. Before you grabbed that hammer, you and Tiffany could have left; is that right?

A:     Yes.

Q:     Okay. So nobody was blocking you way, right?

A:     No. Well, my grandson was still in the house.

Q:     Okay. But nobody was blocking your way; is that right?

A:     Right.

legal duty to retreat; and (3) therefore, there was no misconception on the part of the jury concerning the duty to retreat that needed to be corrected and no plain error in the Circuit Court's failure to address the duty to retreat in its self-defense instruction.

We conclude that the prosecutor's cross-examination of Destin raised the issue of whether she had a duty to retreat to a sufficient extent that the Circuit Court should have instructed the jury that Destin was entitled to estimate the necessity of using protective force without retreating. However, we have already determined that Destin's conviction must be vacated due to the Circuit Court's error in refusing to give a defense-of-others instruction. Accordingly, we need not decide whether the Circuit Court's failure to instruct on Destin's entitlement to estimate the necessity of using protective force without retreating affected Destin's substantial rights. See Hawai'i Rules of Penal Procedure Rule 52 (1977)

We note that the portion of the Circuit Court's instruction challenged by Destin tracked the language of the Hawai'i Standard Jury Instructions Criminal (HAWJIC) Instruction 7.01 (2008) on "Self-Defense," which was then in effect. However, the HAWJIC Instruction 7.01 (2008) used by the Circuit Court was subsequently repealed and replaced by HAWJIC Instructions 7.01A and 7.01B (2011). The new HAWJIC Instructions 7.01A and 7.01B incorporate the language of HRS § 703-304(3) and provide that in cases where deadly force was not used or is not in issue:

> The defendant may estimate the necessity for the use of force under the circumstances as he/she reasonably believes them to be when the force is used, without [retreating] [surrendering possession] [doing any other act that he/she has no legal duty to do] [abstaining from lawful action].

(Brackets in original).

### III.

Destin argues that the Circuit Court erred in refusing, over Destin's objection, to modify its "true threat" instruction.

11

The Circuit Court's "true threat" instruction, which tracked the language of HAWJIC Instruction 9.31 (2008) on "Terroristic Threatening in the First Degree -- Dangerous Instrument," provided, in relevant part:

> The prosecution must also prove beyond a reasonable doubt that the threat was objectively capable of causing fear of bodily injury in a reasonable person at whom the threat was directed and who was familiar with the circumstances under which the threat was made, and:
>
> 1. The threat on its face and in the circumstances in which it was made must have been so clear, unconditional, immediate, and specific as to the person threatened, that the threat communicated a seriousness of purpose and an imminent likelihood of being carried out; or
>
> 2. The defendant, Destin Gallarde, possessed the apparent ability to carry out the threat, such that the threat was reasonably likely to cause fear of bodily injury in Jeremy Goulette.

(Emphasis added.) Destin contends that the Circuit Court's instruction was deficient because the above-quoted paragraph "2." of the instruction failed to require the that threat communicate a seriousness of purpose.[6] We disagree.

In State v. Valdivia, 95 Hawai'i 465, 24 P.3d 661 (2001), the Hawai'i Supreme Court discussed the "true threat" requirement for a terroristic threatening prosecution as follows:

> As our discussion reflects, [State v. Chung, 75 Haw. 398, 862 P.2d 1063 (1993)] judicially narrowed the meaning of the word "threat," as employed in HRS § 707-715, in order to salvage the statutes defining terroristic threatening offenses from unconstitutional overbreadth. As a result, Chung mandates that, in a terroristic threatening prosecution, the prosecution prove beyond a reasonable doubt that a remark threatening bodily injury is a "true threat," such that it conveyed to the person to whom it was directed a gravity of purpose and imminent prospect of execution. In other words, the prosecution must prove beyond a reasonable doubt that the alleged threat was objectively capable of

---

[6] The modification to above-quoted paragraph (2) that Destin proposed, which was refused by the Circuit Court, read as follows:

(2) the threat on its face and in the circumstances in which it was made must have been so clear, unconditional, immediate, and specific as to the person threatened, that the threat communicated a seriousness of purpose and the Defendant possessed the apparent ability to carry out the threat, such that the threat was reasonably likely to cause fear of bodily injury in Jeremy Goulette.

> inducing a reasonable fear of bodily injury in the person at
> whom the threat was directed and who was aware of the
> circumstances under which the remarks were uttered. Under
> the particular circumstances of Chung, as we have indicated,
> the "true threat" was "so unequivocal, unconditional,
> immediate, and specific as to the person threatened, as to
> convey a gravity of purpose and imminent prospect of
> execution."
>
> . . . .
>
> We agree with the California Supreme Court that the
> "imminency" required by [United States v. Kelner, 534 F.2d
> 1020 (2d Cir. 1976], and hence by Chung, can be established
> by means other than proof that a threatening remark will be
> executed immediately, at once, and without delay. Rather,
> as a general matter, the prosecution must prove that the
> threat was objectively susceptible to inducing fear of
> bodily injury in a reasonable person at whom the threat was
> directed and who was familiar with the circumstances under
> which the threat was uttered. See Sovie, 122 F.3d at 125;
> cf. In re M.S., 10 Cal. 4th at 711-715, 42 Cal. Rptr. 2d
> 355, 896 P.2d at 1372-74. Of course, one means of proving
> the foregoing would be to establish, as in Chung and Kelner,
> that the threat was uttered under circumstances that
> rendered it "so unequivocal, unconditional, immediate, and
> specific as to the person threatened, as to convey a gravity
> of purpose and imminent prospect of execution." See Chung,
> 75 Haw. at 416-17, 862 P.2d at 1073; Kelner, 534 F.2d at
> 1026-27. But another would be to establish that the
> defendant possessed "the apparent ability to carry out the
> threat," such that "the threat . . . would reasonably tend
> to induce fear of bodily injury in the victim." In re M.S.,
> 10 Cal. 4th at 712-15, 42 Cal. Rptr. 2d 355, 896 P.2d at
> 1372-74.

Valdivia, 95 Hawai'i at 476-77, 24 P.3d at 672-73 (brackets in
original omitted; ellipsis points in original; emphasis added).

We conclude that the Circuit Court's "true threat"
instruction complied with the requirements for a true threat set
forth in Valdivia and Chung.[2/] Accordingly, the Circuit Court's
"true threat" instruction was not "prejudicially insufficient,
erroneous, inconsistent, or misleading," State v. Vanstory, 91
Hawai'i 33, 42, 979 P.2d 1059, 1068 (1999) (block quote format

---

[2/] Even assuming arguendo, as Destin contends, that the second means of
proving a true threat set forth in Valdivia requires that the threat
communicate a gravity or seriousness of purpose, that requirement would appear
to be satisfied by proof that the threat was objectively capable of causing
fear of bodily injury in a reasonable person at whom the threat was directed
and that the defendant possessed the apparent ability to carry out the threat,
such that the threat was reasonably likely to cause fear of bodily injury in
the alleged victim.

and citations omitted), and the Circuit Court did not err in refusing Destin's request to modify the instruction.

CONCLUSION

For the foregoing reasons, we vacate the Circuit Court's Judgment. We remand the case for a new trial on the first-degree terroristic threatening charge and for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawai'i, July 31, 2012.


On the briefs:

Craig W. Jerome
Deputy Public Defender
for Defendant-Appellant

James M. Anderson
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

14